Good morning, Your Honor. May it please the Court, my name is John Egbert. I represent the Salt River Project, one of the plaintiffs in this action. In this case, the district court relied on Rule 19 to dismiss the plaintiff's Ex parte Young claims on the grounds that those claims were asserted against Navajo Nation officials on the grounds that the Navajo Nation itself could not be joined. But the very purpose of the Ex parte Young doctrine, the United States Supreme Court doctrine in Ex parte Young, is to provide a way to allow, to enable the enforcement of federal law against either state or tribal governments by allowing them to file actions against their officials, as long as the remedy sought is limited to just prospective non-monetary remedies. If allowed to stand, in other words, the district court's decision in this case undid precisely what the Ex parte Young doctrine was intended to accomplish. If allowed to stand, these Navajo official defendants would be allowed to continue violating federal law with impunity. If their argument is it's not violating federal law, you've got a contract dispute. Yes, Your Honor. That is their argument. And as we've demonstrated or we argued in our briefing, that's exactly wrong. And let me explain to you why the Court needs look no further than this Court's decision in Arizona Public Service Company v. Aspas. The two identical arguments that we make in this case were made in Aspas. Number one, that the sovereign, that the, under the Montana analysis, that this, the Navajo Nation has no inherent sovereign authority over the non-Indians in this case. That was, that's one of our arguments. That was one of the arguments in the Aspas case. Our second argument is that even if there was that sovereign authority, at some point it was waived by entering into the lease. That argument was also made in Aspas. The Navajo Nation in, or the officials, Navajo officials in Aspas' decision argued the same argument, that this is a contract case. No need to, this isn't a federal action at all. No federal claims here. The Ninth Circuit rejected that in the Aspas' decision, saying this is a proper Ex parte Young case. It is also, in this case, a proper Ex parte Young case for the same reasons. We have identical claims, almost identical facts, with a power plant and another part of the same reservation, with a lease that has a non-regulation provision just as in Aspas. And so the court, the Ninth Circuit was right in Aspas, and the same conclusion should be reached here. So, Your Honor, this is, this is the quintessential Ex parte Young case. We've alleged in our complaint that they're violating Federal law. In the Verizon decision, the United States Supreme Court said it's a straightforward analysis to determine whether or not there's an Ex parte Young case. Only two things need to be present. One is that there's a claim that they're violating Federal law. We cited to the various paragraphs in our complaint where we assert precisely  that. Then the other element is that they, it has to be limited to prospective non-monetary relief. And we're simply asking for declaratory and injunctive relief. There's no reasonable argument that this is not an Ex parte Young case. So, given the fact that it is Ex parte Young, and by the way, in their answering brief, they don't dispute that the underlying purpose of Ex parte Young is exactly as I represent it in terms of allowing these kinds of claims to actually be asserted, notwithstanding the sovereign immunity of the governmental entity. Nor do they dispute that there's not been a single circuit court decision in the hundred-year history of, of this doctrine where Rule 19 has been applied, as in this case, to dismiss an Ex parte Young claim. And, in fact, it's been expressly rejected by the Seventh, the Eighth, the Tenth, and impliedly rejected by the Fifth Circuit. So there is no authority for what the district court did in this situation. Kennedy. Was that Aspas case a brief to the district court? Was it argued to the district court? Yes, Your Honor. It's, it's, it's. Well, he, he doesn't mention it in his decision, does he, the district judge? He, he does. He mentions it, I believe, in a footnote, Your Honor, of his effect. Let me see. I can't see it. I mean, you know, he relies on this. Where is it? The Dowell v. Dowell case or something like that? Your Honor, if I, you look at excerpt of record page 14. Fourteen? Yes, Your Honor. Oh, yeah. I see it. Footnote 4 recognizes that the plaintiffs in Aspa, in, in the Aspas case were allowed to maintain an action very similar to this one. But he said, all right, so, so he distinguishes on the basis that the record doesn't show that the Rule 19 motion was made in that case. That's right, Your Honor. But that's, that's a, that's a slightly different issue that we haven't even got to yet. We're arguing, is it an ex parte young case at all? Even the district court acknowledged that our claims are ex parte young claims. They're, they're saying that they're not. Aspa says that they are. And the district court says that they are. We say that they are. And they clearly are under the, the straightforward test that the Supreme Court has established. So then the next question is, given the fact that they are ex parte young claims, what, how does Rule 19 interplay with that? And our position is, any, anywhere along the line of the Rule 19 analysis, whether you're in 19A or 19B, the Rule 19, the ex parte young claims cannot be dismissed using, I'm sorry, ex parte young claims cannot be dismissed using Rule 19 analysis. Let's start with Rule 19B. And normally you have to find that they're a required party under Rule 19A before you get to the, all the factors. We would submit that the United, the ex parte young doctrine itself represents the United States Supreme Court's very careful balancing of all the relevant factors, including the, the ones that are specifically referenced in Rule 19B, and, and concluded that given the important constitutional issues that are at, in play in an ex parte young claim, remember what that issue here is, are we going to allow States or tribes to violate Federal law and, and disregard the supremacy clause? And the United States Supreme Court said we cannot. We're, we're going to find a mechanism to allow these claims, to enforce Federal law, even against these entities, governmental entities that have sovereign immunity. And so the mechanism that they said, we're going to allow these claims against their officials, as long as it's limited to prospective non-monetary relief. And so they've already done that balancing. So under no circumstances, even if you find that there is a, an interest by the Navajo Nation, and that that interest cannot be protected, on 19B you never get to the point where you'd say, we're going to allow a State or a tribe to continue violating Federal law because of the sovereign immunity of the tribal entity or the, the State entity. That's undoing exactly, that's abrogating. That's negating the very purpose of the Ex parte Young Doctrine. But even before you get to that point, under 19A, there is no interest. That's the, that's the fundamental point of the Ex parte Young Doctrine, Your Honors, and that is that because what's being alleged, if it is true that the governmental officials are violating Federal law, then the whole point of Ex parte Young was that the State is deemed to not have an interest in that. And therefore, the, the official capacity is stripped away, is what the Ex parte Young case talks about. And, and that official, in the case of Ex parte Young itself, the Attorney General of Minnesota was deemed to not even be representing the State in his actions. So this ruling, unsupported by any case up in the 100-year, more than 100-year history of Ex parte Young, that the district court ruled in this case is simply wrong and, and, and abrogation of the U.S. Supreme Court's Ex parte Young Doctrine, and it should be reversed. I'd like to reserve my remaining minutes for rebuttal. Can I just ask one question? Sure, of course. I hate to take your time for it, because this may or may not be on point, but it has to do with the concept of the Navajo Nation being a sovereign nation. In the Civil Rights era, a State was refusing to enforce Federal law, and the Federal government nationalized the National Guard, et cetera, and forced the State to act for it. Here there's a sovereign nation. If that sovereign nation refuses to comply with our Federal law by appointing a whole series of new officials, what can the Federal government do? It's not a State. We can't nationalize the Guard, and we presumably can't invade. What, what is it? Well, Your Honor, the, it's clear that they are dependent sovereign nations. Okay? So that has a special constitutional status that is unique. They're not like foreign nations. They're not like the country of Mexico. But they're also, you're correct that they're not like States either. But the, the most, I think the, the easiest answer to your concern is the fact that there was an injunction issued in the ASPIS as a result of the ASPIS decision that said Navajo Nation officials, you do not have jurisdiction to regulate the, the Four Corners plant. And that injunction has been effective. There hasn't been a problem in terms of a need to invade or do anything else. That has been acknowledged and enforced and recognized. I would ask my colleagues not to subtract your time for that answer. Thank you, Your Honor. Thank you, Mr. Egbert. Your Honors, David Jordan. I'm here for the defendants, Thin and Ghani, and I'm giving all of my time to Mr. Higdon for the Navajo Nation. Thank you, Mr. Jordan. Good morning. Good morning, Your Honors. I'm Philip Higdon from the law firm of Perkins Coie, representing the Navajo official defendants and appellees in this case. We are here to ask the Court to determine that Judge Teelborg did not abuse his discretion in dismissing this case for failure to join an indispensable party and to affirm Judge Teelborg's dismissal. I find it kind of interesting to see the evolution of SRP's position as this case has gone on over the course of several years. If you read the complaint in SRP's case, it is a breach of contract complaint that refers to the contract, the 1969 lease, about two dozen times, cites it extensively, quotes it extensively, and then throws in the phrase on a handful of occasions, violation of Federal law. So manifestly, this started as a breach of contract case. Reading SRP's briefing in the case, they say, well, what we really have here is an ex parte young case, and alternatively, we're arguing breach of contract. This morning, SRP's case basically is, we have an ex parte young problem here, there's no breach of contract action at all. That literally turns the complaint on its head. Well, in the complaint, did they allege violation of Federal law? They used those words, yes. Doesn't that don't those count? I think it's just somewhat disingenuous to say this is not a breach of contract case. Well, it's a few things. They have several counts, and one count they allege violation of Federal law. No, Your Honor. Actually, that is not a separate count. What's the second claim for relief? The claims for relief have to do with the actual relief they're seeking. They don't have a separate action for violation of Federal law. How many claims for relief do they allege? There are two. Okay. And the second one alleges that they acted without basis in law in violation of Federal law. They acted beyond their jurisdiction without basis in law in violation of Federal law. Yes. What do we do with that language? I'm not denying that the claim is there, Your Honor. I'm just suggesting that they've kind of turned the nature of this case on its head by trying to survive this dismissal. This is their complaint. Yes. So that's the first document. Yes. Okay. It's not an appellate document. That's the document in the court. That is correct.  So what do we do with that allegation? Disregard it? No, I'm not asking the Court to disregard it. I'm just saying that Judge Teelborg was correct when he said what makes this case different is the additional allegation of the breach of contract, and because of the nature of the Federal law they're claiming to have been violated, which is basically case law under Montana, those two issues are so intertwined, you can't separate them. The way Judge Teelborg distinguishes aspects which are pointed out to me seems to me entirely unsatisfactory. I mean, how do you distinguish this case from Aspis? Well, first and foremost, Your Honor, as the footnote that Judge Teelborg wrote points out, there was no Rule 19 argument in Aspis. Aspis was never called upon to determine whether the Navajo Nation was an indispensable party in that case. That was never argued. And I think that if you look at the Dawa Vendoa case, which followed Aspis, and you look at the Ninth Circuit's decision there, you will see exactly how this all fits together. As far as a Rule 19 argument is concerned, there really is no issue in this circuit that the Navajo Nation has a protectable interest that is impaired if this case goes on without it. And that, simply listen to what the Court had to say in Dawa Vendoa there. Because, in this case, SRP challenges the Nation's ability to secure employment opportunities and income for the reservation. Its fundamental consideration in the lease with SRP, the Nation claims a cognizable economic interest in the subject of this litigation, which may be grievously impaired by a decision rendered in its absence. In addition, a judgment rendered in the Nation's absence will impair its sovereign capacity to negotiate contracts and, in general, to govern the Navajo reservation. I don't understand how all that is any different, though, from the Aspis and the APS case. Well, again, that It was the same type of controversy, right? That issue was never argued in the Aspis case. And let me go on to say That issue is the Rule 19 issue. Right. And this Court directly addressed how those two fit together in Dawa Vendoa. No, no, no. But Judge Teelborg seemed to say Rule 19 overrides Young. No, no. That can't be true. Here's what the Ninth Circuit said in Dawa Vendoa about Aspis. I'm talking about what Judge Teelborg said in his opinion. Yes. But here's what the Ninth Circuit said about Aspis in Dawa Vendoa. As in Aspis and Blackfeet Tribe, we have permitted suits against individuals, officials, when it is alleged that those officials acted beyond their authority in contravention of constitutional or federal statutory law. Nevertheless, as we recognized in Sherman, a suit may be barred even if the officer being requested relief will require affirmative actions by the sovereign or disposition of unquestionably sovereign property. Here is Dawa Vendoa's description of Sherman v. United States, another Ninth Circuit decision which followed Aspis. In rejecting plaintiff's attempt to prolong its suit, we reiterated the general rule. Quote from Sherman. A suit is against the sovereign if judgment sought would expend itself on the federal treasury or domain, or interfere with the public administration, or if the effect of the judgment would be to restrain the government from acting or to compel it to act. If the relief will operate against the sovereign, the suit is barred. And the court went on to say in Dawa Vendoa, undoubtedly many actions of a sovereign are performed by individuals. Yet even if Dawa Vendoa alleged some wrongdoing on the part of nation officials, his real claim is against the nation itself. At the bottom, the lease at issue is between SRP and the nation, and the relief Dawa Vendoa seeks would operate against the nation as signatory to the lease. As such, we reject Dawa Vendoa's attempt to circumvent the nation's sovereign immunity by joining tribal officials in its stead. Dawa Vendoa had to do with exactly the same lease we're dealing with here, the same Employment Preference Act provision that we're dealing with here, the same two parties that we're dealing with here, to the lease, the Navajo Nation and SRP. The only difference between this case and Dawa Vendoa is, in Dawa Vendoa, it was SRP that made the same arguments why the Navajo Nation was an indispensable party. They were doing that because they were trying to get out of that lawsuit. In this case, they're attacking the same arguments they made 10 years ago. But what this Court found in Dawa Vendoa then is equally applicable now. Same lease, same provision, same indispensable party, and importantly, the same protectable interest being impaired if this lawsuit goes on without the nation being a party to it. And, of course, it cannot be. So this is the case. Dawa Vendoa is where these arguments were made. This is the case where the Ninth Circuit made its distinction between this situation and the Aspas situation. This is the case that I think really provides guidance. No one disputes the importance of ex parte Young. Well, let me ask this question. Do you think Dawa Vendoa and Aspas can be reconciled with each other? I absolutely do. And on what basis? Well, it can be reconciled because here the Court is being asked, as the Court was asked in Dawa Vendoa, to address directly the impairment on the Navajo Nation if the lawsuit proceeded. The Court was not asked to do that in Aspas. The Court never had to consider it. The Court clearly said in Dawa Vendoa, had those issues been raised in Aspas as they are being raised in Dawa Vendoa, and where we determine, as we do in Dawa Vendoa, that the nation's interests will be impaired if we go forward, the suit is barred. And that's how I think you distinguish them. Basically what Dawa Vendoa tells us, I think, is this. An ex parte Young case is an action against officials acting beyond the scope of their authority in violation of federal law. But the relief sought must not be in interference with the public administration of the sovereign entity, and it must not be a restraint on the government from acting or a compulsion that it act. Because of the nature of the employment preference provision in this lease, the Court found that an attack on that provision or a questioning of that provision or just an issue requiring interpretation of that provision will so impair the nation's interest, it cannot go forward without the nation, even if there are allegations of violations of federal law by the individual Navajo officials. The other thing I want to note is the parties in Dawa Vendoa. Would you remind me, please? Yes. Mr. Dawa Vendoa was a Hopi Indian who sought employment with SRP on the Navajo generating station. Who was the defendant there? SRP. Mr. Dawa Vendoa was charged that SRP was violating Title VII. So tribal officials were not parties. They were not. And the – It's a pretty important distinction, isn't it? Except what they – what was argued during the Dawa Vendoa proceedings was that sovereign immunity was not an issue because they could simply add, Dawa Vendoa said, I can simply add Navajo officials to my lawsuit and get around that problem. And that's actually what caused the Court to address that entire issue. I have nothing further unless the Court has additional questions. Mr. Higgins, thank you. Ms. Regner, back to you. Thank you, Your Honor. Dawa Vendoa is very different from this case. And the reason it is, it's not an ex parte young case at all. For the – you point out, Your Honor, that tribal officials were not brought in. Mr. Dawa Vendoa tried to bring him in at the very last minute to save his case, but Dawa Vendoa was said, you are violating SRP. You're violating Title VII by giving preference over Hopis to Navajos. And we said, look, we've got a lease that says we have to give preference, and the lease is with the Navajo Nation. And we said, you're putting us in a position where we're either going to have to choose to violate the lease or we're going to have to violate the Title VII. And that's a classic situation for Rule 19. And so it was appropriate under those circumstances. Dawa Vendoa has no application here. It's not an ex parte young case. And, in fact, the Ninth Circuit ruled in Dawa Vendoa that it wasn't an ex parte young claim. So think about it in these terms. What if Mr. Higgins' argument were right? South Dakota versus Borland, the Eighth Circuit decision which we cite, which ultimately went to the U.S. Supreme Court and said, tribal Indian tribe, you cannot regulate these non-Indians. That was the holding in the U.S. Supreme Court. Never would have got to the U.S. Supreme Court if his argument were right, that because it would affect the interests of that tribe and its ability to administer or enact laws that somehow then you can't sue them because you can't sue their tribal officials and keep them from violating federal law. That's not what ultimately happened in the Borland case. Nor was it what happened in the Aspis case. Nor was it what occurs any time there's an ex parte young claim. If it were as simple as arguing that, look, we have an interest here, think about ex parte young itself. That was a case where the Minnesota legislature enacted a statute saying, you need to, railroads, you have to limit your rates that you can charge. If Minnesota would have come in and said, look, we've got an interest in this statute. We want to enforce it. And it's really a suit against us. That's exactly the claim, the argument that the United States Supreme Court rejected. It's not a claim against Minnesota. That was the, quote, fiction or the important piece about the ex parte young doctrine that the United States Supreme Court enacted to allow this to happen, to allow courts the opportunity, federal courts, to enforce federal law, notwithstanding what otherwise would be a sovereign immunity situation. They said, when you've got a sovereign who's violating federal law, then you can bring a suit against their officials as long as it's limited, not by the limitations that Mr. Hickett argues for. The only limitation is that it not be for prospect or not be for monetary relief. It has to be limited to prospective. Your Honors, the trial court's decision was an abrogation of ex parte young. No case prior in over 100 years reached that conclusion. And it should be overturned. It's wrong. And it's an abrogation of the 100 years' worth of U.S. Supreme Court decision that has significant constitutional implications. And we would ask the Court to reverse. Thank you, Your Honors. Thank you, Mr. Hickett. Mr. Hickett, thank you. The case just argued is submitted. Good morning.
judges: Garbis, Tashima, Silverman